IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEO SIDES, both INDIVIDUALLY and as the ADMINISTRATOR of the ESTATE of CHRISTOPHER SIDES, Plaintiff, | : : : : : | CIVIL ACTION |
| v. | : : | NO. 12-6330 |
| HARLEY-DAVIDSON, USA, et al., Defendants. | : : | |

**M E M O R A N D U M**

SITARSKI, M.J.                                                                                              May 15, 2013

I.     INTRODUCTION

Plaintiff Leo Sides ("Sides"), both individually and as the Administrator of the Estate of Christopher Sides, originally brought this strict liability and negligence action seeking money damages in the Court of Common Pleas of Philadelphia County against Defendants Harley-Davidson, USA, Mike's Famous Harley-Davidson ("Mike's"), Rommel Harley-Davidson ("Rommel"), Avon Motorcycle Tyres North America, Cooper Tire & Rubber Company Europe Limited ("Cooper Europe"), Big Dog Motorcycles, LLC ("Big Dog"), and BDM Performance Products, arising from a motorcycle accident that resulted in the death of Christopher Sides ("Christopher").[1]  The action was removed to this Court on November 9, 2012.  Currently pending before the Court[2] is a motion by Cooper Europe to dismiss for lack of personal

---

[1] Plaintiff later stipulated to the dismissal without prejudice of Harley-Davidson, USA, Avon Motorcycle Tyres North America, and BDM Performance Products.

[2] This matter initially was assigned to the Honorable Juan R. Sanchez.  On April 22, 2013, the parties consented to the exercise of jurisdiction by a United States Magistrate Judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

jurisdiction and improper venue.³  (Doc. No. 36.)  For the following reasons, the motion will be GRANTED.

## II.   FACTUAL BACKGROUND

On October 11, 2010, Leo and Christopher Sides traveled together from Drexel Hill, Pennsylvania to a motorcycle dealership in Smyrna, Delaware, to purchase a motorcycle. (Compl. ¶ 13.)  Christopher purchased a 2003 Big Dog Pitbull Motorcycle equipped with two tires manufactured by Cooper Europe.  (*Id.* ¶ 10.)  He began to ride the motorcycle back to his house, traveling northbound on Korean War Veterans Memorial Highway (SR-1) in Delaware. (*Id.* ¶¶ 14-15.)  The motorcycle exited the roadway and struck the center median guardrail, resulting in grievous injuries to Christopher.  (*Id.* ¶¶ 16-17.)  He subsequently died on March 24, 2011.  (*Id.* ¶ 18.)

The tires mounted on the motorcycle at the time of the accident had been manufactured by Avon Tyres, a name formerly used by Cooper Europe.  (*See* Compl. ¶ 6; Def. Mot. Ex. B, Affidavit of Douglas Ian Ross ("Ross Aff.") ¶ 6.)  There is no allegation that these tires were purchased in Pennsylvania, sold in Pennsylvania, operated on a motor vehicle in Pennsylvania, or otherwise ever entered into Pennsylvania.  Cooper Europe asserts that it is a foreign corporation that is not now and has not ever been licensed to do business in Pennsylvania.  (*See* Ross Affidavit ¶ 7.)  It asserts that: it maintains no offices in Pennsylvania; owns no assets in

---

³ After the Motion was filed, Sides sought leave to conduct jurisdictional discovery (Doc. No. 41), which was granted by Order of February 7, 2013.  (Doc. No. 43.)  Sides filed his Response to the Motion on March 1, 2013.  (Doc. No. 50.)  Thereafter, Mike's and Rommel joined in Sides's opposition to Cooper's Motion.  (Doc. No. 51.)

Pennsylvania, pays no taxes in Pennsylvania, and has no bank accounts in Pennsylvania; has never filed suit in any state or federal court in Pennsylvania; does not advertise, promote, market or sell tires to retailers or consumers in Pennsylvania; has never designed or manufactured any products in Pennsylvania; and does not design any product specifically for the Pennsylvania market. (*Id.* ¶¶ 5-13.) Prior to November 2009, independent distributors that do market tires in Pennsylvania, purchased tires that were delivered "duty paid" from Cooper Europe. Decisions about where the tires would be marketed in North America were made by these independent distributors, and not by Cooper Europe. (*Id.* ¶ 14.) Since November 2009, Max-Trac, Inc., a wholly owned subsidiary of Cooper Tire & Rubber Company, Delaware USA, has purchased tires from Cooper Europe for distribution in North America. Max-Trac made decisions about where the tires would be marketed; Cooper Europe does not own, manage or control Mac-Trac. (*Id.* ¶ 15.) Based on the Department of Transportation number provided by Sides, Cooper Europe asserts that the subject tires were placed on the subject motorcycle as original equipment when it was assembled in 2003 in Wichita, Kansas. (*Id.* ¶ 16.)

Cooper Europe's only connection to Pennsylvania is that a number of its tires were sold in Pennsylvania between 2002 and 2013.[4] (*See* Resp. Ex. C, Defendant Cooper Tire & Rubber Company Europe Limited's Responses and Objections to Plaintiff's Jurisdictional and Venue Discovery Requests, at 7-10.) Between 2002 and 2007, Cooper Europe arranged for the delivery by a consignee or carrier of 31,559 tires to independent distributors in Harrisburg, Telford, and Colmar, Pennsylvania. (*Id.* at 7.) Of that total, 12,710 were Venom-X or Venom-R brand tires,

---

[4] During jurisdictional discovery, Sides limited his inquiries to this time period. *See* Plaintiff's Discovery Requests ¶¶ 11-15.

the same type of tires which were installed on the subject motorcycle as original equipment. (*Id.* at 8.) Between 2008 and 2013, Cooper Europe arranged for distribution of an additional 3,432 Venom-X and Venom-R tires to Pennsylvania. (*Id*. at 9-10.)

### III.     LEGAL STANDARD

On a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of proving that jurisdiction is proper by "affidavits or other competent evidence." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 329 (3d Cir. 2009) (quoting *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1285, 1302 (3d Cir. 1996)). When the court does not hold an evidentiary hearing, the plaintiff need only establish a *prima facie* case of personal jurisdiction. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (quoting *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004)). The plaintiff presents a *prima facie* case for the exercise of personal jurisdiction by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Assoc.*, 819 F.2d 434 (3d Cir. 1987)).

In ruling on a 12(b)(2) motion, I am required to take all of the plaintiff's allegations as true, and to resolve all factual disputes in plaintiff's favor. *Metcalfe*, 566 F.3d at 329 (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003)). Nevertheless, "at no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of *in personam* jurisdiction. Once the motion is made, plaintiff must respond with actual proofs, not mere allegations." *Time Share Vacation Club v.*

*Atl. Resorts, Ltd.*, 735 F.2d 61, 68 n.9 (3d Cir. 1984) (citation omitted).  "[T]he plaintiff bears the burden of establishing with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction." *Provident Nat'l Bank*, 819 F.2d at 437 (citing *Gehling v. St. George's Sch. of Med., Ltd.*, 773 F.2d 539, 542 (3d Cir. 1985)).  "To meet this burden, the plaintiff must establish either that the particular cause of action sued upon arose from the defendant's activities within the forum state ('specific jurisdiction') or that the defendant has 'continuous and systematic' contacts with the forum state ('general jurisdiction')." *Id*. (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

"A federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *Provident Nat'l Bank*, 819 F.2d at 436 (citing Fed. R. Civ. P. 4(e)).  Accordingly, this Court applies the Pennsylvania long-arm statute (42 Pa. Cons. Stat. Ann. §§ 5301, 5322), which extends the personal jurisdiction of Pennsylvania courts "to the constitutional limits of the Due Process Clause of the Fourteenth Amendment." *See Pennzoil Prods. Co. v. Colelli & Assocs.*, 149 F.3d 197, 200 (3d Cir. 1998) (quoting *Mellon Bank (East) PSFS, Nat'l Ass'n*, 960 F.2d at 1221).

**IV.   DISCUSSION**

Sides concedes that this Court does not have specific personal jurisdiction over Cooper Europe, so the analysis is limited to the issue of general personal jurisdiction.[5]  General personal

---

[5] While he concedes that there is no specific jurisdiction, Sides attempts to argue that 42 Pa. Cons. Stat. Ann. §5322(a) subjects Cooper Europe to jurisdiction in this forum because Cooper Europe "transacts business" in the Commonwealth.  (Pl. Resp. at 8-11.)  This argument is based on a misapplication of §5322(a), which only applies to cases of specific personal jurisdiction. *See, e.g., Willyoung v. Colorado Custom Hardware, Inc.*, Civ. A. 08-17, 2009 WL 3183061, at *3 (E.D.

5

jurisdiction requires that the defendant have continuous and systematic contacts with the forum state that are "substantial." *Provident Nat'l Bank*, 819 F.2d at 437. In a unanimous opinion, the United States Supreme Court recently clarified that the connections with the forum state had to be "so 'continuous and systematic' as to render [the corporation] essentially at home in the forum state." *Goodyear Dunlop Tires Operations v. Brown*, ___ U.S. ___, 131 S. Ct. 2846, 2851 (2011). The Court identified the paradigmatic bases for exercise of general personal jurisdiction over a corporation as including its domicile, place of incorporation, or principal place of business. *Id*. at 2853-2854 (citing Brilmayer et al., *A General Look at General Jurisdiction*, 66 Texas L. Rev. 723, 728 (1988)). It reiterated that "[a] corporation's continuous activity of some sorts within a state" does not render that corporation subject to general jurisdiction in that state. *Id*. at 2856 (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 318 (U.S. 1945)).

Applying *Goodyear*, it is clear that Cooper Europe is not "essentially at home" in Pennsylvania. It has no office in Pennsylvania, it is not licensed to conduct business here, and it maintains no bank account here. It owns no assets in Pennsylvania and does not pay taxes here. The only contact that Cooper Europe has with Pennsylvania is that a number of its tires, delivered by a consignee or carrier, have been sold by independent distributors in Pennsylvania. These contacts are not sufficiently continuous and systematic to justify the exercise of general jurisdiction.

---

Pa. Sept. 30, 2009) (stating that § 5322 "allows for specific personal jurisdiction to be exercised over non-residents"). Because his cause of action does not arise from the sale of Cooper Europe tires that occurred in Pennsylvania, Sides cannot rely on §5322(a) to assert jurisdiction. Rather, the appropriate statutory basis for asserting general personal jurisdiction in Pennsylvania is 42 Pa. Cons. Stat. Ann. §5301(a)(2)(iii) (providing for the exercise of general personal jurisdiction over foreign corporations that carry on "a continuous and systematic part of its general business within this Commonwealth").

Sides attempts to distinguish *Goodyear* by arguing that Cooper Europe has been shipping tires *directly* into Pennsylvania, while the defendant in *Goodyear* was allegedly shipping its goods *indirectly* into the forum state. (Pl. Resp. at 2, 13-14.) Even accepting the characterization that Cooper Europe's use of consignees or carriers to ship goods to independent distributors constitutes "direct" shipping into Pennsylvania, this is a distinction without a difference. The *Goodyear* Court has rejected this "sprawling view" of general jurisdiction, whereby any seller of goods can find itself "amenable to suit, on any claim for relief, wherever its products are distributed." *Id.*, 131 S. Ct. at 2856-57. While the North Carolina state courts had held that placing the product at issue in the "stream of commerce" so that it could reach North Carolina was sufficient to establish general jurisdiction in North Carolina, the *Goodyear* Court made clear that a "connection so limited between the forum and the foreign corporation, we hold, is an inadequate basis for the exercise of general jurisdiction. Such a connection does not establish the 'continuous and systematic' affiliation necessary to empower North Carolina courts to entertain claims unrelated to the foreign corporation's contacts with the State." *Id*. at 2851. Accordingly, the fact that Cooper Europe shipped other tires directly into Pennsylvania, without more, is insufficient to support the exercise of general jurisdiction.[6]

An appropriate Order will be entered.

                                            BY THE COURT:

                                            /s/ Lynne A. Sitarski
                                            LYNNE A. SITARSKI
                                            UNITED STATES MAGISTRATE JUDGE

---

[6] Because I conclude that there is no basis for the exercise of personal jurisdiction over Cooper Europe, there is no need to reach the issue of venue.